**PACIFIC NORTHWEST BELL TELE-PHONE COMPANY, a Washington corporation, Plaintiff,**

**v.**

**Elizabeth DOLE, Secretary, United States Department of Transportation; Ralph L. Stanley, Administrator, Urban Mass Transportation Administrator, Region X, Urban Mass Transit Administration; the Urban Mass Transportation Administration, a Department of the United States Department of Transportation; the Municipality of Metropolitan Seattle, and the City of Seattle, Defendants.**

**No. C86–111D.**

United States District Court, W.D. Washington.

May 7, 1986.

David C. Groff, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for plaintiff.

Ronald E. Cox, Karen Reed, Preston, Thorgrimson, Ellis & Holman, Seattle, Wash., for Mun. Metro. Seattle.

Judith B. Barbour, Douglas N. Jewett, City Atty., Seattle, Wash., for City of Seattle.

Robert M. Taylor, Asst. U.S. Atty., Seattle, Wash., for federal defendants.

## MEMORANDUM AND ORDER

DIMMICK, District Judge.

This case involves the Downtown Seattle Transit Project ("Project"), an electric bus transit tunnel proposed to be constructed in Seattle.[1] Pacific Northwest Bell ("PNB") challenges the adequacy of the Project's

---

1. The Project proposes the construction of a 1.3 mile L-shaped tunnel that begins at Union Station and proceeds north along Third Avenue to Pine Street where it turns east and continues along Pine Street to Ninth Avenue. Two separate parallel tunnels are proposed, each approxi-

environmental review under the National Environmental Policy Act, 42 U.S.C. § 4332, and the State Environmental Policy Act ("SEPA"), RCW 43.21C. The federal defendants[2] move to dismiss the federal cause of action; they contend that PNB does not have standing and has not stated a claim for which relief can be granted. The Court agrees with defendants' argument regarding lack of standing.[3]

In ruling on a motion for lack of standing, this Court accepts as true all material allegations of the complaint and will construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Consequently, the following allegations are accepted as true.

## PNB'S ALLEGATIONS

The construction of the Project will directly and adversely affect PNB's telephone facilities. Both the Draft and Final Environmental Impact Statements prepared for the Project fail to accurately calculate the settlement rate of the earth during construction. "Even minor changes in the stability of the earth support may result in damage and disruption in service." Complaint ¶ 8.7.

There is a significant probability that earth settlement will result in shear failure of conduits at various locations along the Third Avenue corridor. Failure of the conduit and cables will abruptly and without warning terminate telephone service to subscribers in the Seattle CBD [Central Business District], as well as regional users of the trunk lines. Complaint ¶ 8.9.

A shear failure would sever communications lines resulting in immediate and devastating service outages for thousands of individuals, businesses, governmental agencies and computer operations served by the impacted facilities. Repairs would be costly and time consuming.

Complaint ¶ 8.8.

A total of 46,000 telephones are directly connected to or affected by the facilities that will be impacted by the Project. "The affected public includes a large percentage of the businesses and offices in the Seattle CBD, federal, state and local governmental facilities, including the King County Superior Court, and several residential apartment facilities." Complaint ¶ 8.4. The communications facilities contain vital links between FAA radar sites located on Magnolia and Seattle-Tacoma International Airport and also links for the United States Coast Guard's vessel traffic safety control system for the Puget Sound. The 911 emergency service may be affected as well.

## STANDING

In order to have standing under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, a party must show that an agency's actions have caused, or could cause, plaintiff an injury in fact and that such injury is arguably within the zone of interests to be protected by NEPA. *See Port of Astoria, Oregon v. Hodel*, 595 F.2d 467, 474 (9th Cir.1979).

### 1. Injury in Fact

In order to satisfy this criterion of the standing test, a plaintiff must allege specif-

mately 20 feet in diameter. Construction under Third Avenue will be by boring at a depth of between 60 and 70 feet. As of the date of this Order, there is no commitment to provide federal funding for construction of this project.

**2.** The federal defendants are Elizabeth Dole, Secretary of the United States Department of Transportation; the United States Department of Transportation; Ralph L. Stanley, the Administrator for the Urban Mass Transportation Administration ("UMTA"); Aubrey Davis, Adminis-

trator for Region X of UMTA; and UMTA. The other two defendants are the Municipality of Metropolitan Seattle and the City of Seattle. In this Memorandum, the federal defendants will be referred to as simply "defendants."

**3.** Because of this Court's ruling on the standing issue, it does not address the defendants' contention that this case should be dismissed because PNB has failed to state a claim for which relief can be granted.

ic, concrete facts demonstrating how the agency action either has harmed him or will harm him. *Port of Astoria, Oregon, supra.* The defendants contend that the injury PNB is alleging concerns the users of the telephone system and not PNB itself. PNB does not rely, however, on the potential harm to the telephone system users in order to establish standing. Instead, PNB contends that the damage that may[4] occur to its equipment fulfills the injury in fact test. The Court finds that this allegation is sufficiently specific and concrete to satisfy the injury in fact requirement.

**2. Arguably within Zone of Interests**

■ NEPA requires all federal agencies to evaluate the environmental impact of the proposed action and any unavoidable adverse environmental effects. 42 U.S.C. § 4332(C). PNB attempts to bring its claim within the zone of interests that NEPA was intended to protect by arguing that the possible temporary interruption of telephone service with severe consequences to its customers is an environmental interest. However, as noted in the previous section, PNB only relies on its allegation that its own facilities might be damaged in order to meet the injury-in-fact test. PNB cannot allege one type of injury to satisfy one-half of the standing test and another injury to satisfy the other half. Therefore, the issue presented to the Court is whether NEPA requires an agency to consider whether a private company's communications conduits and cables may be damaged. The query itself provides the answer: no.

Even if PNB had properly argued that it would suffer an injury in fact by the possible interruption of phone service to its customers,[5] it still would not have come within the zone of interests meant to be protected by NEPA.

To determine whether an impact can be characterized as an "environmental impact," a court must examine the relationship between the effect of the agency's action and the change in the physical environment caused by such action. *Metropolitan Edison Co. v. People Against Nuclear Energy,* 460 U.S. 766, 103 S.Ct. 1556, 75 L.Ed.2d 534 (1983). The complaint does not allege that the disruption of telephone communications will change the physical environment for the residents of the Puget Sound region. Therefore, no "environmental impact" is involved here. As the Supreme Court recently recognized:

> NEPA does not require the agency to assess *every* impact or effect of its proposed action, but only the impact or effect on the environment. If we were to seize the word "environmental" out of its context and give it the broadest possible definition, the words "adverse environmental effects" might embrace virtually any consequence of a governmental action that someone thought "adverse." But we think the context of the statute shows that Congress was talking about the physical environmental—the world around us, so to speak.

*Id.* at 772, 103 S.Ct. at 1560 (emphasis in original).[6] This Court concludes that, ac-

---

**4.** In its brief, PNB argues that the complaint states that its telephone facilities *will* be damaged by the Project's construction. PNB is misreading its own complaint. The complaint states that there is a *substantial probability* that its equipment will be damaged if earth settlement occurs.

**5.** The defendants, at one point in their brief, raise the question that PNB might not be the proper party to bring a claim of injury to its customers and not itself. After having raised the issue, however, defendants simply let it drop and failed to pursue it. Accordingly, the Court will not address this issue. Instead, for purposes of this motion, the Court will assume that

PNB is the proper party to assert the claims of its customers.

**6.** PNB cites *Hanly v. Mitchell,* 460 F.2d 640 (2d Cir.), *cert. denied,* 409 U.S. 990, 93 S.Ct. 313, 34 L.Ed.2d 256 (1972) and *Como-Falcon Coalition, Inc. v. United States Dept. of Labor,* 465 F.Supp. 850 (D.Minn.1978), *modified,* 609 F.2d 342 (8th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980) to support their position that an environmental impact is involved here. Even if the Court were to follow the holding of those cases, its decision would not change. Both those cases involved long-term changes in the physical urban environ-

cepting the allegations in the complaint as being true, the Project's construction will have an impact on PNB and the residents in the Puget Sound Region. However, the "impact" will not be an "environmental impact."

The Court does not wish to be viewed as underestimating or undervaluing PNB's allegations. If true, serious consequences may occur. However,

> [t]he gravity of harm does not change its character. If a harm does not have a sufficiently close connection to the physical environment, NEPA does not apply.

*Metropolitan Edison Co.*, 460 U.S. at 778, 103 S.Ct. at 1563 (footnote omitted).

ment. Here, no long-term physical changes are

THEREFORE, the defendants' motion to dismiss for lack of standing is GRANTED. PNB's NEPA claim is DISMISSED WITH PREJUDICE as to all defendants. PNB's claim based on state law is DISMISSED WITHOUT PREJUDICE. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). PNB may file in state court to adjudicate the SEPA claim.